# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DONALD BROWN, | ) |
| Plaintiff, | ) |
| v. | ) |
| WELLPOINT, INC., U.S. CENTERS FOR MEDICARE & MEDICAID SERVICES, NATIONAL GOVERNMENT SERVICES, INC., JOHN DOES 1 THROUGH 5, and JANE DOES 6 THROUGH 10, | ) No. 1:25-cv-10029-JEK |
| Defendants. | ) |

## MEMORANDUM AND ORDER ON MOTIONS TO DISMISS

**KOBICK, J.**

Plaintiff Donald Brown, proceeding *pro se*, brought this action seeking $50,000 in damages for the defendants' allegedly improper withholding of his settlement payment from a personal injury action. The complaint asserts ten claims against defendants Wellpoint, Inc. ("Elevance"),[1] the Centers for Medicare & Medicaid Services ("CMS"), National Government Services, Inc. ("NGS"), and ten unnamed individuals associated with those defendants. Pending before the Court are a motion to dismiss filed by CMS and NGS and a separate motion to dismiss filed by Elevance. For the reasons that follow, those motions will be granted. The claims against CMS will be dismissed for lack of subject matter jurisdiction or for failure to state a claim. Brown also fails to plausibly allege any claims against NGS. And the Court lacks personal jurisdiction over Elevance.

---

[1] This defendant represents that Wellpoint, Inc. is the predecessor entity of Elevance Health, Inc. *See* ECF 17, at 1 n.1; ECF 18, ¶ 5; ECF 20. The Court follows the defendant's lead and uses the term "Elevance" throughout this decision.

## BACKGROUND

The Court recounts the facts based on the allegations in the complaint, which is construed liberally because Brown is *pro se*. *See In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 919 F.3d 638, 642 (1st Cir. 2019); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). It also supplements those facts with the jurisdictional evidence submitted in connection with Elevance's motion to dismiss. *See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).

Brown suffered mental injuries at a nursing home in July 2023. ECF 22-1, at 5-22 ("Complaint"), ¶¶ 10-11. He settled a lawsuit against that nursing home in August 2024. *Id.* ¶¶ 12-13. Since then, Brown alleges, CMS has "held up" his settlement through "inaction" that has prevented him from receiving any funds from the nursing home. *Id.* ¶¶ 14-15. The complaint references and attaches a November 27, 2024 email, apparently from an attorney at Morrison Mahoney LLP, explaining that Brown's claim had been submitted to CMS for review and was still being processed, which could "take some time" to resolve. ECF 22-1, at 23; Complaint ¶ 15.

On November 29, 2024, Brown filed this action in Dedham District Court against Elevance, CMS, NGS, and several John and Jane Does. Complaint ¶¶ 6-9; ECF 1-2. The complaint asserts the following ten claims against all defendants: false or misleading representations in violation of 15 U.S.C. § 1125(a) and state law (Counts I and III, respectively);[2] fraud and concealment (Count II); invasion of privacy (Count IV); intentional and negligent infliction of emotional distress (Counts V and VI, respectively); negligent hiring, training, and supervision (Counts VII, VIII, and IX, respectively); and tortious interference with an advantageous

---

[2] The complaint alleges a violation of "Massachusetts G.L. Sec 13A" without identifying the relevant chapter. Complaint, at 10.

relationship (Count X). Complaint ¶¶ 16-98. Brown seeks $50,000 in damages. *Id.* ¶ 2; ECF 1-1, at 2.

On January 6, 2025, CMS and NGS removed the case to this Court under 28 U.S.C. § 1442(a)(1). ECF 1, at 2. Three weeks later, they moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. ECF 14. Elevance separately filed a motion to dismiss for lack of personal jurisdiction and for failure to state a claim. ECF 16. In a supporting declaration, Elevance's Senior Vice President and Counsel, Pamela Williams, Esq., avers that "Elevance is a holding company incorporated in the State of Indiana," with a "principal place of business in Indianapolis," and has not done any business in Massachusetts, including, as relevant here, between 2021 and 2024. ECF 18, ¶¶ 3-4, 6. She also avers that Elevance's predecessor entity, Wellpoint, "has never operated in Massachusetts." *Id.* ¶ 5. Brown filed an opposition to Elevance's motion but did not oppose CMS and NGS's motion. ECF 23. After holding a hearing, at which Brown did not appear, the Court took the motions under advisement. ECF 35.

## DISCUSSION

### I.     CMS and NGS's Motion to Dismiss.

CMS and NGS move to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. In evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Johansen v. United States*, 506 F.3d 65, 68 (1st Cir. 2007) (quotation marks omitted). When ruling on such a motion, the Court must credit the "'plaintiff's well-pled factual allegations and dra[w] all reasonable inferences in the plaintiff's favor.'" *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 13 (1st Cir. 2023) (quoting *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010)).

In assessing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[f], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (quotation marks omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

A.    Count I.

Count I asserts a claim against CMS and NGS under the Lanham Act, 15 U.S.C. § 1125(a), for "false or misleading representations." Complaint ¶¶ 16-20. To establish a claim under 15 U.S.C. § 1125(a) for unfair competition or false advertising, a plaintiff must allege that:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002).

Brown alleges that the defendants' "systemic practices rise to the level of false or misleading representations under the plain definition of those words and are highly likely to have misled [him] or the law firm involved to interrupt [his] settlement." Complaint ¶ 17. Brown has not, however, pled any factual allegations that could support any element of this claim. *See*

*Douglas v. Hirshon*, 63 F.4th 49, 55 (1st Cir. 2023) (refusing to credit conclusory legal allegations). Accordingly, Count I must be dismissed.

    B.    <u>Count II.</u>

Count II asserts that CMS and NGS engaged in "fraud and concealment." Complaint, at 9. "The elements of fraud consist of '[1] a false representation [2] of a matter of material fact [3] with knowledge of its falsity [4] for the purpose of inducing [action] thereon, and [5] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573 (2017) (quoting *Danca v. Taunton Sav. Bank*, 385 Mass. 1, 8 (1982)).[3] The complaint alleges that CMS and NGS have engaged in fraud by concealing details about Brown's account, failing to issue notices about that account, and interrupting payment of his settlement because of his allegedly poor behavior without specifying how he could remedy the situation. Complaint ¶¶ 22-27. Brown fails, however, to allege that he relied on any statement made by CMS or NGS. This omission is fatal to his fraud claim against CMS and NGS. Count II will therefore be dismissed.[4]

---

[3] CMS and NGS also argue that fraudulent concealment is not a cause of action, but rather a doctrine used to toll the statute of limitations. ECF 15, at 3. But given that a *pro se* complaint like this one "is 'to be liberally construed'" and "'must be held to less stringent standards than formal pleadings drafted by lawyers,'" the Court construes Count II as a common-law fraud claim. *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[4] CMS is also entitled to sovereign immunity on Brown's fraud claim. "[J]urisdictional in nature," *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994), "'sovereign immunity shields the Federal Government and its agencies from suit'" absent an express waiver, *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *id.*). The Federal Tort Claims Act waives sovereign immunity for certain tort claims, but not those "arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h). This provision "comprehends claims arising out of negligent, as well as willful, misrepresentation." *United States v. Neustadt*, 366 U.S. 696, 702 (1961). Because Brown's fraud claim falls within this exception, the Court lacks jurisdiction over the claim against CMS. *See Jean v. Brennan*, No. 14-cv-11969-ADB, 2015 WL 4750858, at *2 (D. Mass. Aug. 11, 2015) (dismissing fraud claim against federal agency for lack of jurisdiction under that Act).

C.    Count III.

Count III asserts that CMS and NGS made "false or misleading representations" in violation of "Massachusetts G.L. Sec 13A," without specifying the chapter. Complaint, at 10. The Court cannot discern what statute Brown seeks to invoke; "section 13A" does not on its face appear to refer to any provision of the Massachusetts General Laws addressing false or misleading representations. Count III is therefore dismissed against CMS and NGS for failure to state a claim.

D.    Counts IV-X.

The remaining counts against CMS and NGS assert tort claims for invasion of privacy; intentional and negligent infliction of emotional distress; negligent hiring, training, and supervision; and tortious interference with an advantageous relationship. These claims will be dismissed against CMS for lack of subject matter jurisdiction and against NGS for failure to state a claim.

The Court lacks subject matter jurisdiction over Counts IV through X against CMS because Brown fails to allege that he exhausted his administrative remedies. The Federal Tort Claims Act ("FTCA"), which governs these counts, waives the sovereign immunity of the United States and its agencies for certain torts committed by federal employees, including negligence and other tortious acts or omissions. *See* 28 U.S.C. §§ 1346(b)(1), 2679(a); *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475-76 (1994); *Armor Elevator Co. v. Phoenix Urb. Corp.*, 655 F.2d 19, 22 (1st Cir. 1981). The statute also "provides that an 'action shall not be instituted upon a claim against the United States for money damages' unless the claimant has first exhausted his administrative remedies." *McNeil v. United States*, 508 U.S. 106, 107 (1993) (quoting 28 U.S.C. § 2675(a)). It thus "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *Id.* at 113; *see Cormier v. U.S. Dep't of Labor*, 30 F.3d 126, at *3 (1st

Cir. 1994) (per curiam) ("The [Supreme] Court specifically held that a litigant's *pro se* status does not excuse his failure timely to file an administrative claim."). Brown fails to allege that he presented or exhausted his administrative claim with CMS before filing this lawsuit. Counts IV through X will, accordingly, be dismissed as to CMS for lack of subject matter jurisdiction. *See Barrett ex rel. Est. of Barrett v. United States*, 462 F.3d 28, 38 (1st Cir. 2006) (finding "lack [of] jurisdiction to review Plaintiff's FTCA claim against the government" because "Plaintiff failed to exhaust her remedies").

Counts IV through X against NGS will be dismissed for failure to state a claim. The Court liberally construes Count IV as asserting a claim of invasion of privacy under M.G.L. c. 214, § 1B. *See Alberts v. Devine*, 395 Mass. 59, 70 (1985) ("a common law cause of action for invasion of privacy" has not been recognized). Section 1B provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy." M.G.L. c. 214, § 1B. To sustain a claim under that statute, "'the invasion must be both unreasonable and substantial or serious.'" *Ortiz v. Examworks, Inc.*, 470 Mass. 784, 793 (2015) (quoting *Nelson v. Salem State College*, 446 Mass. 525, 536 (2006)). Brown alleges that NGS has "regularly invaded [his] Privacy . . . by putting [him] in a false light . . . as a 'deadbeat.'" Complaint ¶ 42. But Massachusetts has not recognized a "false light invasion of privacy claim" under M.G.L. c. 214, § 1B. *Ayash v. Dana-Farber Cancer Inst.*, 443 Mass. 367, 382 n.16 (2005) (citing *ELM Med. Lab'y, Inc. v. RKO Gen., Inc.*, 403 Mass. 779, 532 (1989)). Brown also alleges that NGS has "regularly invaded [his] Privacy" by "publishing private and false facts about [him] in his healthcare benefit accounts." Complaint ¶¶ 40-41. Without further elaboration, these conclusory allegations are insufficient to plausibly allege that NGS unreasonably, substantially, or seriously interfered with Brown's privacy. Count IV will therefore be dismissed.

Counts V and VI assert claims for intentional and negligent infliction of emotional distress, respectively. To sustain the former claim, Brown must plausibly allege that (1) NGS "'intended to inflict emotional distress or that [it] knew or should have known that emotional distress was the likely result of [its] conduct'"; (2) "'the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community'"; (3) NGS's actions caused Brown's distress; and (4) his emotional distress was "'severe.'" *Butcher v. Univ. of Mass.*, 483 Mass. 742, 758 (2019) (quoting *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 672 (2010)). Brown's allegations fall far short. The complaint merely alleges each of these elements in a conclusory fashion without any factual support. *See* Complaint ¶¶ 46-54. Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Count VI suffers from the same infirmity. To prevail on his negligent infliction of emotional distress claim, Brown must adequately allege "'(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case.'" *Lanier v. President & Fellows of Harvard Coll.*, 490 Mass. 37, 44 (2022) (quoting *Payton v. Abbott Labs*, 386 Mass. 540, 557 (1982)). The complaint again improperly relies on conclusory allegations. *See* Complaint ¶¶ 57-66. Brown alleges, for example, that NGS's "actions were clearly negligent," *id.* ¶ 62, but he does not support that conclusory allegation with any facts showing that NGS owed him a duty or that its "failure to exercise reasonable care resulted in a breach of that duty," *Lanier*, 490 Mass. at 44. Accordingly, Counts V and VI will be dismissed.

Counts VII, VIII, and IX assert claims of negligent hiring, training, and supervision, respectively. "[P]rivate employers hiring public-facing employees must exercise reasonable care

in selecting those employees and, in retaining them, must continue 'exercising reasonable care to ensure that their employees do not cause foreseeable harm to a foreseeable class of plaintiffs.'" *Theisz v. Massachusetts Bay Transp. Auth.*, 495 Mass. 507, 518 (2025) (quoting *Helfman v. Ne. Univ.*, 485 Mass. 308, 326 (2020)). "A private employer who fails to exercise reasonable care in hiring, training, supervising, and retaining such public-facing employees can be liable for its negligence in this regard." *Id.*; *see Doe v. Brandeis Univ.*, 718 F. Supp. 3d 83, 92 n.1 (D. Mass. 2024) ("Massachusetts case law does not meaningfully distinguish between the torts of negligent supervision, retention, training, and hiring."). To sustain his three claims, Brown must allege that NGS became "aware or should have become aware of problems with an employee that indicated his unfitness" and that it "fail[ed] to take further action such as investigating, discharge or reassignment.'" *Helfman*, 485 Mass. at 326 (quoting *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 291 (1988)). Yet the complaint does not identify the relevant NGS employee or any issues with that employee. Because Brown's unadorned legal conclusion that NGS negligently hired, trained, and supervised its employees is not supported by well-pled factual allegations, these claims will be dismissed. *See* Complaint ¶¶ 68-91; *Iqbal*, 556 U.S. at 679; *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, 338 (1st Cir. 2022) (affirming dismissal of negligent supervision claim where plaintiff did "not allege with any specificity how [supervisor] would have become aware of [employee's] alleged incompetence").

Count X alleges that NGS tortiously interfered with an advantageous relationship. To succeed on this claim, Brown must allege "that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) [NGS] knowingly induced a breaking of the relationship; (3) [NGS's] interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) [he] was harmed by

[NGS's] actions.'" *Tenants' Dev. Corp. v. AMTAX Holdings 227, LLC*, 495 Mass. 207, 223 (2025) (quoting *Blackstone v. Cashman*, 448 Mass. 255, 260 (2007)). The complaint alleges that "a contractual relationship between [Brown] and a third party ([his] creditors)" existed; NGS "harmed [him] by interfering with that contractual relationship by making false statements to the third party"; NGS's conduct was tortious because it lacked "privilege or justification"; and "[a]ctual damage resulted to [Brown] as a consequence of [NGS's] conduct." Complaint ¶¶ 93-97. Brown fails, however, to allege sufficient facts to support these conclusory allegations. He does not, for example, allege that NGS "knowingly induced" a rupture between him and any third parties, or that NGS's interference was "improper in motive or means." *Blackstone*, 448 Mass. at 260. His claim for tortious interference will accordingly be dismissed.

## II.    <u>Elevance's Motion to Dismiss.</u>

Elevance moves to dismiss the complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[5] In considering a Rule 12(b)(2) motion to dismiss, the Court may use one of three methods to assess whether Brown has met his burden to establish personal jurisdiction: the prima facie method, the preponderance method, or the likelihood method. *See A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 & n.5 (1st Cir. 2016). The prima facie method is "most commonly employed in the early stages of litigation." *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83-84 (1st Cir. 1997). Under that approach, the Court must ask whether Brown has "proffer[ed] evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." *Baskin-Robbins*, 825 F.3d at 34. It is not sufficient for him to "'rely on unsupported allegations in [his] pleadings.'" *A Corp.*, 812 F.3d at 58 (quoting *Platten v. HG Bermuda Exempted*

---

[5] Because the Court lacks personal jurisdiction over Elevance, it does not reach Elevance's alternative argument that the complaint fails to state a claim against it under Rule 12(b)(6).

*Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006)). He "must go beyond the pleadings and make affirmative proof." *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90, 94 (1st Cir. 2024) (quotation marks omitted).

"Due process dictates that a court may only assert its power over an out-of-forum defendant if the party has 'such contacts with the forum [State] that the maintenance of the suit is reasonable, in the context of our federal system of government, and does not offend traditional notions of fair play and substantial justice.'" *Sec. & Exch. Comm'n v. Gastauer*, 93 F.4th 1, 8 (1st Cir. 2024) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021)). The due process inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum State.'" *Ford Motor*, 592 U.S. at 358 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017)).

The Court lacks general jurisdiction over Elevance. General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). This allows a corporate defendant like Elevance to be sued "only in States where the corporation is incorporated or has its 'principal place of business.'" *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 137 (2023) (quoting *Ford Motor*, 592 U.S. at 359). The Senior Vice President and Counsel for Elevance, Pamela Williams, Esq., avers in her declaration that Elevance is incorporated and has its principal place of business in Indiana. ECF 18, ¶¶ 3-4. Elevance cannot, accordingly, be subject to general jurisdiction in Massachusetts. *See Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 58 (1st Cir. 2020) (finding no general jurisdiction where "Massachusetts [was] neither [defendant's] state of incorporation nor its principal place of business").

The Court also lacks specific jurisdiction over Elevance. Because Elevance limits its jurisdictional objection to constitutional grounds, "the court need only consider those particular grounds." *Motus, LLC v. CarData Consultants, Inc.*, 23 F.4th 115, 122 (1st Cir. 2022); *see* ECF 17, at 7 ("[A]ny exercise of jurisdiction over Elevance would not comport with constitutional requirements."). The exercise of specific jurisdiction over Elevance satisfies due process if Brown can "show that (1) [his] claim directly arises out of or relates to [Elevance's] forum activities; (2) [Elevance's] forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering [Elevance's] involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." *Plixer Int'l, Inc. v. Scrutinizer GmbH*, 905 F.3d 1, 7 (1st Cir. 2018). "This test is flexible and fact-specific, written more in shades of grey than in black and white." *Rosenthal*, 101 F.4th at 95 (quotation marks omitted).

Brown fails to meet this burden. The only evidence before the Court is Williams' declaration, which establishes that Elevance has no business in Massachusetts. In her declaration, Williams attests that Elevance is a holding company incorporated and principally based in Indiana that "does no business in Massachusetts," "has no staff or customers in Massachusetts," and "is not involved with any settlements in Massachusetts." ECF 18, ¶¶ 3-4, 6, 12-15. Nor has Elevance's predecessor entity, Wellpoint, ever operated in the Commonwealth. *Id.* ¶ 5.

True, Williams also avers that NGS is a wholly owned subsidiary of Elevance. *Id.* ¶ 8. But courts generally presume "the institutional independence of parent and subsidiary when determining whether jurisdiction may be asserted over the parent solely on the basis of the subsidiary's contacts with the forum." *Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). The "presumption of corporate separateness" can only "be overcome by clear

evidence." *Platten*, 437 F.3d at 139 (quotation marks omitted). This bar is met when, for example, "the parent has utilized the subsidiary in such a way that an agency relationship between the two corporations can be perceived," "the exercise of control by the parent [is] 'greater than that normally associated with common ownership and directorship,'" or "the subsidiary is merely an empty shell." *Donatelli*, 893 F.2d at 466 (citations omitted).

Brown does not proffer any evidence, let alone clear evidence, to support disregarding the corporate form between Elevance and its subsidiary, NGS. *See* ECF 18 ¶ 9 ("NGS is separately incorporated and independent from Elevance."). Instead, he asserts in his brief that Elevance "owns or hires the co-defendants" and "controls a company which does business in Massachusetts." ECF 23, at 10. Such assertions, however, are not evidence. *See Rivera-Corraliza v. Morales*, 794 F.3d 208, 224 (1st Cir. 2015) (An "allegation in their brief certainly is *not* evidence."). Nor, in any event, would these conclusory allegations be sufficient. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg.*, 295 F.3d 59, 66 (1st Cir. 2002). Absent any evidence to support disregarding the corporate form, NGS's alleged actions in Massachusetts cannot be imputed to its parent, Elevance. Because "nothing in the record substantiates the proposition that [Elevance] 'plainly made a choice to avail itself'" of the Massachusetts forum, no specific jurisdiction exists over Elevance, and its motion will be granted for lack of personal jurisdiction. *Platten*, 437 F.3d at 139 (quoting *Donatelli*, 893 F.2d at 466).

## III.    <u>John and Jane Doe Defendants.</u>

Only the named defendants—Elevance, CMS, and NGS—brought motions to dismiss. Defendants John Does 1 through 5 and Jane Does 6 through 10 have yet to be served. With respect to these unserved defendants, Brown is past the 90-day period for service set by Federal Rule of Civil Procedure 4(m). When, as here, an "action is dismissed as to all defendants who have been

served and only unserved defendants 'remain,' . . . there is no reason . . . to preclude the immediate and automatic entry of a final judgment since there is no basis for believing there will be any further adjudications in the action." *Leonhard v. United States*, 633 F.2d 599, 608 (2d Cir. 1980); *accord Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1360 (D.C. Cir. 2007) (collecting cases). That is especially so in this case, given Brown's allegations that each of the unserved defendants "is or was an employee, agent or servant of [a named] defendant, legally responsible, . . . for the events and happenings hereinafter set out in the complaint and that they . . . jointly and severally proximately caused [his] damages." Complaint ¶¶ 8-9. Accordingly, Brown's claims against the unserved and unnamed defendants are also dismissed. *See W. Cap. Design, LLC v. New York Mercantile Exch.*, 180 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) (dismissing complaint "entirely" because it could "not stand against only unnamed, unserved defendants"), *aff'd*, 25 F. App'x 63 (2d Cir. 2002).

## CONCLUSIONS AND ORDERS

For the foregoing reasons, CMS and NGS's motion to dismiss, ECF 14, and Elevance's motion to dismiss, ECF 16, are GRANTED. Because the claims against Elevance are dismissed for lack of personal jurisdiction, such claims would typically be dismissed without prejudice. In view of Brown's vexatious pattern of litigation, however, Elevance seeks dismissal with prejudice. The Court concurs that dismissal with prejudice is warranted. Brown did not appear at the hearing on the motions to dismiss, indicating his lack of intent to prosecute this case. He has also filed numerous lawsuits in this and other courts that have been dismissed for lack of prosecution, for failure to comply with court orders, and for asserting frivolous allegations. *See, e.g.*, ECF 9, 10, *Brown v. Wells Fargo Bank, N.A.*, No. 25-cv-10379-RGS (D. Mass.) (dismissal with prejudice based on claim preclusion, with recommendation that Brown be barred from filing further lawsuits

14

without prior approval of the Chief Judge); ECF 14, 15, *Brown v. JPMorgan Chase & Co.*, No. 24-cv-11571-FDS (D. Mass.) (dismissal based on claim preclusion that notes Brown's pattern of filing "groundless or vexatious lawsuits"); ECF 20, 21, *Brown v. Apple, Inc.*, No. 24-cv-11510-WGY (D. Mass.) (dismissal with prejudice for failure to appear at hearing); ECF 18, 19, *Brown v. Equifax, Inc.*, No. 24-cv-11331-LTS (D. Mass.) (dismissal for failure to prosecute); ECF 23, 24, *Brown v. JPMorgan Chase & Co.*, No. 24-cv-11078-RGS (D. Mass.) (dismissal with prejudice for failure to comply with court order); ECF 10, 11, *Brown v. JPMorgan Chase & Co.*, No. 23-cv-13053-FDS (D. Mass.) (dismissal for failure to comply with court order); ECF 21, 22, *Brown v. JPMorgan Chase & Co.*, No. 22-cv-11298-FDS (D. Mass.) (dismissal for failure to state a claim); ECF 10, *Brown v. Capitol One*, No. 18-cv-10759-DJC (D. Mass.) (dismissal for failure to comply with court order). In view of this pattern of vexatious and frivolous litigation, Brown's claims in this matter are DISMISSED in their entirety with prejudice.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: August 13, 2025